TIMMONS-GOODSON, Judge.
Defendant Kevin Lamonte Handy appeals from a judgment revoking his probation and activating his suspended sentence. On appeal, he contends that the trial court erred in finding that he violated the terms and conditions of his probation as set forth in paragraphs two and four of his probation violation report, and revoking his probation and activating his suspended sentence. These arguments are unpersuasive, and therefore, we affirm the judgment of the trial court.
On or about 25 June 2001, defendant pled guilty to two counts of taking indecent liberties with children and two counts of intercourse and sexual offenses with students. In accordance with his plea agreement, the trial court sentenced defendant to a mitigated term of ten to twelve months imprisonment for the intercourse and sexual offenses with students convictions, and nineteen to twenty-three months imprisonment for the indecent liberties convictions. The nineteen to twenty-three month sentence for the indecent liberties convictions was, however, suspended and defendant was placed on supervised probation. The terms and conditions of defendant's probation included requirements that he complete community service as directed by the community service coordinator; "[r]emain within the jurisdiction of the Court unless granted permission to leave by the Court or the probation officer"; and "[r]eport as directed by the Court or the probation officer to the officer at reasonable times and places and in a reasonable manner, permit the officer to visit at reasonable times, answer all reasonable inquiries by the officer and obtain prior approval from the officer for, and notify the officer of, any change in address or employment."
On 12 March 2003, defendant's probation officer, Thomas Dalton, filed a verified probation violation report alleging the defendant had violated probation as follows: (1) he failed to demonstrate that he had completed any of the required seventy-two hours of community service; (2) he traveled from Maryland to Georgia without permission, had not reported to his Maryland probation officer, and when ordered to report back to Charlotte, North Carolina, by 5 March 2003, he failed to do so; (3) he had a balance of $85.00 due to the specialized sexual offender program that he attended; and (4) he traveled from Maryland to Georgia without permission from the State of Maryland or the State of North Carolina. A probation violation hearing was held in the superior court on 9 June 2003.
After electing not to proceed on the first allegation in the probation violation report, the State presented the testimony of defendant's probation officer, Thomas Dalton, regarding the remaining three allegations. Dalton explained that defendant approached him in December 2002 about having his probation transferred to Maryland. Dalton thereafter issued a travel permit to defendant to travel to Maryland, where he was to report to probation and parole officials there. Dalton subsequently received information, from Agent Aladegoke Akinsola in Hyattsville, Maryland, through the interstate compact division in Raleigh, North Carolina, that defendant's probation was denied for transfer to Maryland because defendant failed to report as directed and was currently in Atlanta, Georgia, without permission from Akinsola. At Dalton's request, Akinsola sent a letter dated 7 March 2003, which detailed his reasons for rejecting defendant's probation transfer request. The letter stated that defendant, who had been assigned to Akinsola for investigation of interstate probation transfer, failed to report to Akinsola by 13 January 2003 as directed. Further, the letter stated that defendant failed to demonstrate that he registered with the Maryland State Police through the Prince George's Police Department as a sex offender. In fact, the letter stated that defendant went to Atlanta without Akinsola's permission, and therefore, Akinsola opined that defendant was a danger to the community and recommended that defendant be returned to North Carolina immediately. Dalton also testified that on 24 February 2003, after receiving the initial communication from Agent Akinsola, he telephoned defendant and instructed defendant to report to his office on 5 March 2003. Defendant failed to report to Dalton until 24 March 2003, at which time he was arrested for violating his probation. Dalton also testified that defendant failed to pay the balance due to Blue Ridge Behavior Systems for sex offender treatment received by defendant, an amount of $85.00.
Defendant testified that he paid $440.00 to Blue Ridge Behavior Systems, that he gave Dalton's assistant a receipt for his records, and that he was told that the bill was paid in full. Defendant further testified that he did register as a sex offender in Maryland, and submitted documentation in support of his testimony. However, defendant admitted that he did not have permission to go to Georgia. He testified that when he talked to Dalton in February 2003, Dalton instructed defendant to continue to call Dalton and said that he had not talked to anyone from Maryland yet. Defendant denied that Dalton told him to report to Dalton's office on 5 March 2003. Defendant stated that he returned to North Carolina a week before his arrest on 24 March 2003, during which time he made appointments with Dalton, went to Dalton's office and waited to see him, but that he did not see Dalton until the date of his arrest.
After hearing the testimony and arguments of counsel, the trial court dismissed the third allegation, but found that defendant had willfully and without lawful excuse violated the terms and conditions of his probation as set out in paragraphs two and four of the violation report. The court therefore revoked defendant's probation and activated his suspended sentence. Defendant appeals.
The sole issue before this Court on appeal is whether the trial court erred in revoking defendant's probation and activating his sentence. It is well settled that since probation is "'an act of grace by the State to one convicted of a crime,'... a proceeding to revoke probation is not bound by strict rules of evidence and an alleged violation of a probationary condition need not be proven beyond a reasonable doubt." State v. Hill, 132 N.C. App. 209, 211, 510 S.E.2d 413, 414 (1999) (quoting State v. Freeman, 47 N.C. App. 171, 175, 266 S.E.2d 723, 725 (1980)). "All that is required is that the evidence be sufficient to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation." State v. White, 129 N.C. App. 52, 58, 496 S.E.2d 842, 846 (1998). "[O]nce the State has presented competent evidence establishing a defendant's failure to comply with the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms." State v. Terry, 149 N.C. App. 434, 437-38, 562 S.E.2d 537, 540 (2002). "If the trial court is then reasonably satisfied that the defendant has violated a condition upon which a prior sentence was suspended, it may within its sound discretion revoke the probation." Id. at 438, 562 S.E.2d at 540. This Court has long held, "[a]ny violation of a valid condition of probation is sufficient to revoke [a] defendant's probation." State v. Tozzi, 84 N.C. App. 517, 521, 353 S.E.2d 250, 253 (1987).
In the instant case, the evidence of record tends to show that defendant's probation officer, Thomas Dalton, filed a verified violation report in the superior court on or about 12 March 2003, alleging that defendant violated four terms and conditions of his probation. At the violation hearing, the State elected not to proceed on the issues presented in the first paragraph of the violation report, and the trial court dismissed the allegations of the third paragraph of the violation report. The State presented the testimony of Dalton, which was in conformity with the remaining allegations of his violation report. Dalton also explained the procedure necessary for defendant to travel outside of Maryland. Notably, Dalton testified that if defendant had been given permission by Agent Akinsola in Maryland, a third-party travel permit would have been issued to defendant and North Carolina would have been notified that defendant was going to Georgia. Dalton noted that neither he nor Akinsola gave defendant permission to go to Georgia. No third-party travel permit was issued to defendant.
Defendant testified at the revocation hearing and admitted to traveling to Atlanta, Georgia without permission of Akinsola or Dalton. Initially, defendant contended that he attempted to get permission from Akinsola, but Akinsola was not in his office. Defendant further testified that he left telephone messages explaining that he would not be present for a pre-arranged meeting with Akinsola because he was traveling to Georgia for a job interview. However, defendant subsequently testified that he spoke with Akinsola about his interview in Georgia, and had been told by Akinsola only "to contact him as soon as [he] could." Defendant further testified that he called Dalton as soon as he got to Georgia, and Dalton told him to "hold tight, just continue to call, he hadn't talked to anybody yet." Defendant denied that Dalton told him to report to his office on 5 March 2003; he testified that Dalton told him only that "[he] needed to get back to North Carolina but he didn't give [him] a date." Defendant testified that when he asked Dalton if there was a problem, Dalton assured him that there was not. Defendant stated that he was in North Carolina for a week before meeting with Dalton and being arrested, that he had called Dalton on numerous occasions before that time, and that he kept making appointments, but was unable to meet with Dalton. Defendant denied absconding from the jurisdictions of North Carolina and Maryland, or deliberately failing to comply with the terms and conditions of his probation.
We conclude that the evidence was sufficient to satisfy the trial court that defendant willfully and without lawful excuse violated the terms and conditions of his probation as set forth in paragraphs two and four of the violation report. Though defendant denies willfully absconding from the jurisdictions of Maryland and North Carolina, he did admit to having gone to Georgia without permission from Agent Akinsola or Dalton. This, in and of itself, is sufficient to support the trial court's revocation of defendant's probation. See Tozzi, 84 N.C. App. at 521, 353 S.E.2d at 253. As to defendant's argument that Akinsola implicitly agreed to allow him to travel to Georgia, we note that Akinsola's 7 March 2003 letter states that defendant went to Georgia without his permission. Additionally, Dalton testified that if permission had been granted for defendant to travel to Georgia by Maryland officials, a third-party travel permit would have been issued by Maryland and North Carolina would have been notified that defendant was traveling to Georgia. No such third-party travel permit has been shown to exist. Moreover, though defendant denied that he was told to report back to Charlotte by 5 March 2003, the State presented evidence to the contrary. It appears that the trial court, as fact-finder, gave little weight to defendant's testimony and contentions that his actions were not in willful and unlawful disregard of the terms and conditions of his probation.
In light of the foregoing, we conclude that the trial court did not abuse its discretion in revoking defendant's probation and activating his suspended sentence. The judgment of the trial court is, therefore, affirmed.
Affirmed.
Judges CALABRIA and LEVINSON concur.
Report per Rue 30(e).